UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN BOSLEY,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE RIDGE BANKSHARES, INC., VANCE SPILMAN, WILLIAM W. STOKES, CIARAN McMULLAN, HUNTER H. BOST, HEATHER M. COZART, HARRY W. GOLLIDAY, OTIS S. JONES, TREVOR MONTANO, JULIEN G. PATTERSON, RANDOLPH N. REYNOLDS JR., and ANTHONY SCAVUZZO,<br><br>Defendants. | Case No. 26-cv-12818 |

**COMPLAINT**

Plaintiff Brian Bosley ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Blue Ridge Bankshares, Inc. ("Blue Ridge" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Blue Ridge, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in

connection with the proposed acquisition of Blue Ridge by HomeTrust Bancshares, Inc. ("Parent" or "HomeTrust") wholly controlled subsidiary Kinloch Merger Sub, Inc. ("Merger Sub."), an entity formed for the sole purpose of facilitating the present transaction (together with HomeTrust and Merger Sub., "HomeTrust").

2. On or about August 17, 2026, Blue Ridge entered into an agreement and plan of merger (the "Merger Agreement"), whereby HomeTrust will acquire Blue Ridge (the "Proposed Transaction") and shareholders of Blue Ridge common stock will receive 0.086 shares of HomeTrust common stock for each share of Blue Ridge common stock they own (the "Exchange Ratio" or "Merger Consideration").

3. On or about October 2, 2026, in order to convince Blue Ridge shareholders to support the Proposed Transaction, the Board authorized the filing of a Form S-4 Registration Statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). As detailed below, the Registration Statement is materially incomplete and misleading.

4. The special meeting at which Blue Ridge shareholders will cast their votes on the Proposed Transaction (the "Special Meeting") will be scheduled and the definitive solicitation material that will be used to solicit votes on the Proposed Transaction will be sent to Blue Ridge shareholders shortly. It is imperative that the material information that has been omitted from the Registration Statement be disclosed immediately so public stockholders may have time to consider the information that has been omitted and misrepresented and make a fully and fairly informed determination as to how to vote.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction, unless and until the material information discussed below is disclosed to Blue Ridge shareholders, or, in the event the Proposed Transaction

is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2). A significant portion of events occurred in this District because Defendants are subject to personal jurisdiction in this District, Blue Ridge's financial advisor maintains offices in this District, and shareholders of Blue Ridge reside in this District so Defendants were aware that the Registration Statement would be reviewed in this District. *Santore v. Swaminathan*, No. 17 cv 5742, 2018 U.S. Dist. LEXIS 33352, at *23 (N.D. Ill. Mar. 1, 2018) ("the standard for establishing venue under [the Exchange Act] is not a rigorous one") (quoting

*Haskett v. Reliv' Int'l.*, No 94 c 1461, 1994 U.S. Dist. LEXIS 5678, at *6 (N.D. Ill. Apr. 29, 1994)); *see also City of Miami Gen. Emples. & Sanitation Emples. Ret. Trust v. Casey*, No. 22-cv-2371, 2023 U.S. Dist. LEXIS 239991, at *4 (S.D. Ohio Mar. 27, 2023) ("The rule for establishing venue under the Securities Exchange Act is more permissive than under 28 U.S.C. § 1391, consistent with the intent of the venue and jurisdiction provision in the securities laws 'to grant potential plaintiffs liberal choice in their selection of a forum.'")(quoting *Wayne Cnty. Emples.' Ret. Sys. v. MIC Inv. Corp.*, 604 F. Supp. 2d 969, 973 (E.D. Mich. 2009)). Further, Defendants were aware that the Registration Statement would be reviewed in this District. *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal and was read and relied upon by the plaintiff in Salt Lake City, Utah).

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Blue Ridge common stock.

10. Defendant Blue Ridge is a publicly traded company that provides commercial, consumer, and financial banking services. Blue Ridge's common stock trades on the New York Stock Exchange American (the "NYSE American") under the ticker symbol "BRBS."

11. Defendant Vance H. Spilman ("Spilman") is the Chairman of the Board of Directors of the Company.

12. Defendant William W. Stokes ("Stokes") is the Vice Chairman of the Company.

13. Defendant Hunter H. Bost ("Bost") is a director of the Company.

14. Defendant Heather M. Cozart ("Cozart") is a director of the Company.

15. Defendant Harry W. Golliday ("Golliday") is a director of the Company.

16. Defendant Otis S. Jones ("Jones") is a director of the Company.

17. Defendant Ciaran McMullan ("McMullan") is a director of the Company.

18. Defendant Trevor Montano ("Montano") is a director of the Company.

19. Defendant Julien G. Patterson ("Patterson") is a director of the Company.

20. Defendant Randolph N. Reynolds, Jr. ("Reynolds") is a director of the Company.

21. Defendant Anthony Scavuzzo ("Scavuzzo") is a director of the Company.

22. The defendants identified in paragraphs 11 through 21 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Proposed Transaction

23. In the second quarter of 2024, Blue Ridge completed a $162 million capital raise transaction through a private placement of securities to institutional investors that included Kenneth R. Lehman ("Lehman") and Castle Creek Capital partners VIII L.P. ("Castle Creek"). Following the private placement, Lehman and Castle Creek owned 23.7% and 13.6%, respectively, of the outstanding common stock of the Company. Additionally, Lehman designated Defendant Montano its board representative to the Company and Castle Creek designated Defendant McMullan and Defendant Scavuzzo as its board representatives to the Company.

24. On January 21, 2026, to assist with the evaluation and pursuit of strategic alternatives, the Board established a "Strategic Alternatives Committee" consisting of Defendants Spilman, Montano, and Scavuzzo.

25. On April 15, 2026, the Board formally engaged Stephens, Inc. ("Stephens") as its financial advisor.

26. On June 5, 2026, the Board and Strategic Alternatives Committee began outreach to seven institutions identified by Stephens as the most suitable for a potential business combination.

27. Between June 5 and June 15, 2026, nondisclosure agreements were executed by five interested institutions, one of which included HomeTrust.

28. On June 30, 2026, HomeTrust submitted an indication of interest proposing a per share value of $4.05 to $4.30 per share, which implied an exchange ratio range of 0.0827 to 0.0878.

29. Due diligence continued between the Company and HomeTrust throughout July 2026, including the initial exchange of a draft merger agreement.

30. On August 3, 2026, HomeTrust proposed an exchange ratio of 0.086 shares of HomeTrust common stock for each share of Blue Ridge common stock.

31. Over the next several days, the respective legal counsel for both the Company and HomeTrust negotiated the remaining terms of the merger agreement.

32. On August 17, 2026, the parties signed the Merger Agreement.

## B. The Proposed Transaction and the Issuance of the Materially Incomplete and Misleading Proxy Statement

33. On or about August 17, 2026, Blue Ridge and HomeTrust issued a joint press release to announce the Proposed Transaction, stating in part:

**HomeTrust Bancshares, Inc. Expands into Attractive Virginia Markets Through Acquisition of Blue Ridge Bankshares, Inc.**

ASHEVILLE, N.C. and RICHMOND, Va., Aug. 17, 2026 /PRNewswire/ -- HomeTrust Bancshares, Inc. (NYSE: HTB) ("HomeTrust"), the holding company of HomeTrust Bank, and Blue Ridge Bankshares, Inc. (NYSEAM: BRBS) ("Blue Ridge"), the holding company of Blue Ridge Bank, National Association ("Blue Ridge Bank"), today jointly announced the signing of a definitive merger agreement ("Agreement"), pursuant to which HomeTrust will acquire Blue Ridge in an all-stock transaction valued at approximately $448.1 million

The acquisition expands HomeTrust's footprint into desirable Virginia markets, creating a commercial bank with over $7 billion in assets and over 60 locations across the Southeast. Leveraging HomeTrust's demonstrated performance improvement and merger experience, the combined company will be one of only three $5-10 billion major-exchange traded banks in the region, creating a market leading franchise well positioned for long-term growth and value creation for its stockholders.

[…]

Under the terms of the Agreement, Blue Ridge shareholders will receive 0.086 of a share of HomeTrust common stock for each share of Blue Ridge common stock. Based on HomeTrust's 5-day volume-weighted average price of approximately $49.82 per share on August 14, 2026, the transaction would result in aggregate consideration of $448.1 million, or $4.28 per share. Holders of approximately 25% of Blue Ridge's outstanding warrants have agreed to exchange their warrants for HomeTrust common stock. Remaining warrant holders have the right to do the same with their warrants or have their warrants rolled into newly issued HomeTrust warrants. The transaction is intended to qualify as a tax-free reorganization for federal income tax purposes. Upon completion, HomeTrust stockholders are expected to own approximately 65% of the combined company while Blue Ridge shareholders are expected to own approximately 35%. Two Blue Ridge directors will join the board of directors of HomeTrust and HomeTrust Bank

The transaction is expected to close early in the first quarter of 2027 and be accretive to earnings per share by approximately 30% assuming anticipated cost savings are fully achieved beginning in 2028. HomeTrust estimates dilution to tangible book value per share of approximately 8.3% at the closing of the transaction, with an earn-back period of approximately 3.25 years.

The boards of HomeTrust and Blue Ridge unanimously approved the transaction, which is subject to regulatory approvals, HomeTrust and Blue Ridge stockholder approvals, and other customary conditions of closing

A copy of HomeTrust's investor presentation may be accessed from HomeTrust's August 17, 2026, Form 8-K filing with the Securities and Exchange Commission (the "SEC") or under "Investor Relations" on HomeTrust's website, www.htb.com.

> Piper Sandler & Co. is serving as financial advisor and Silver Freedman, Taff & Tiernan LLP is serving as legal counsel to HomeTrust on the transaction. Stephens Inc. is serving as financial advisor and Williams Mullen is serving as legal counsel to Blue Ridge on the transaction.

34. On or about October 2, 2026, the Board authorized the filing of the Registration Statement with the SEC.

**C. <u>The Preclusive Deal Protection Devices</u>**

35. The Merger Agreement contains onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

36. The Merger Agreement provides for a termination fee payable to Parent by the Company in the amount of $18.0 million in the event the transaction is not consummated.

37. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

**D. <u>The Materially Incomplete and Misleading Registration Statement</u>**

38. The Registration Statement is materially incomplete and misleading with respect to HomeTrust's financial advisor Piper Sandler & Co.'s ("Piper Sandler") role in acting as a placement agent for the transaction responsible for establishing Lehman and Castle Creek's substantial stake in the Company.

**The Registration Statement is Materially Incomplete and Misleading as to Piper Sandler's Financial Services to Blue Ridge.**

39. The Registration Statement is materially incomplete and misleading as to Piper Sandler's role in Blue Ridge's approximately $162 million capital raise through private placements in April and June 2024 (the "2024 Recapitalization").

40. Specifically, the Registration Statement provides that Piper Sandler received approximately $6.8 million in compensation for their services as a placement agent in connection with the "the offer and sale of Blue Ridge common stock," which closed in June 2024:

> ***Piper Sandler's Relationship***
>
> Piper Sandler is acting as HomeTrust's financial advisor in connection with the mergers and will receive a fee for such services in an amount equal to $3.75 million, which advisory fee is contingent upon consummation of the mergers. Piper Sandler also received a $500,000 fee from HomeTrust upon rendering its opinion, which opinion fee will be credited in full towards the advisory fee which will become due and payable to Piper Sandler upon consummation of the mergers. HomeTrust has also agreed to indemnify Piper Sandler against certain claims and liabilities arising out of Piper Sandler's engagement and to reimburse Piper Sandler for certain of its out-of-pocket expenses incurred in connection with Piper Sandler's engagement.
>
> In the two years preceding the date of Piper Sandler's opinion, Piper Sandler provided certain other investment banking services to HomeTrust. In summary, Piper Sandler acted as financial advisor to HomeTrust in connection with the sale of certain branch offices, which transaction closed in May 2025 and for which Piper Sandler received approximately $130,000 in compensation. In the two years preceding the date of Piper Sandler's opinion, Piper Sandler provided certain other investment banking services to Blue Ridge. In summary, Piper Sandler acted as placement agent in connection with the offer and sale of Blue Ridge common stock, which transaction closed in June 2024 and for which Piper Sandler received approximately $6.8 million in compensation. In addition, in the ordinary course of Piper Sandler's business as a broker-dealer, Piper Sandler may purchase securities from and sell securities to HomeTrust, Blue Ridge and their respective affiliates. Piper Sandler may also actively trade the equity and debt securities of HomeTrust and Blue Ridge for Piper Sandler's account and for the accounts of Piper Sandler's customers.

Registration Statement at 64

41. The Registration Statement fails to disclose whether Piper Sandler's $6.8 million fee was for the same capital raise transaction involving Lehman and Castle Creek during the "second quarter of 2024" as described in the *Background of the Mergers* which included a $150 million private placement that closed April 3, 2024, involving Lehman and Castle Creek, or the separate approximately $11.6 million placement to Richard Spurzem that closed in June 2024, or from some combination of the two.

*See* https://www.sec.gov/Archives/edgar/data/842717/000119312524086088/d820926dex991.htm (last accessed 10/16/2026);

https://www.sec.gov/Archives/edgar/data/842717/000119312524161712/d810744d8k.htm (last accessed 10/16/2026).

42. Although the Background identifies Lehman as the lead investor and Castle Creek as a participant in the 2024 Recapitalization, it does not identify Piper Sandler's role. Lehman and Castle Creek obtained substantial ownership positions and board-designation rights, and their designated representatives, Defendants Montano and Scavuzzo, served on Blue Ridge's Strategic Alternatives Committee. Registration Statement at 42–43. However, in addition to the capital raise transaction in June 2024, a Blue Ridge Form D filing dated April 16, 2024 (the "Form D") also identifies Piper Sandler as the recipient of approximately $6.9 million in finder's fees in connection with an offering whose first sale occurred April 3, 2024 in which $150 million had been sold.

*See* https://www.sec.gov/Archives/edgar/data/842717/000084271724000003/xslFormDX01/primary_doc.xml (last accessed 10/16/2026).

43. Blue Ridge's Form D, signed April 16, 2024, identifies Piper Sandler as receiving approximately $6.9 million in estimated "Finders' Fes," while reporting no "Sales Commissions" while also identifying April 3, 2024 as the first sale of $150 million. As such, the Registration Statement fails to clarify whether Piper Sandler's approximately $6.8 million compensation figure relates exclusively to the April 3, 2024 placement, the June placement, or a combined financing engagement, especially as Lehman and Castle Creek were active participants in the various placements since April 2024: "The Private Placement was led by Defendant Lehman, a private investor, with many years of experience investing in banks, with participation from Castle Creek Capital Partners VIII L.P. ("Castle Creek"), other new and existing institutional investors, and certain Blue Ridge directors and officers."

https://www.sec.gov/Archives/edgar/data/842717/000119312524086088/d820926dex991.htm

(last accessed 10/16/2026).

44. The role of Piper Sandler and their potential former relationships with Lehman and Castle Creek is clearly material to the reasonable stockholder, especially as Piper Sandler was an active participant in the various placements occurring since at least 2024. A reasonable stockholder would therefore consider it important whether Piper Sandler introduced or solicited Lehman or Castle Creek or otherwise secured their participation. The April announcement identifies Lehman as the lead investor, Castle Creek as a participating investor, and Piper Sandler as sole placement agent. Any material preexisting or continuing relationships with those investors relevant to Piper Sandler's current role as HomeTrust's financial advisor would bear on shareholders' assessment of any potential conflict of interests in the Proposed Transaction.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

48. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

49. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements

therein not false or misleading." 17 C.F.R. § 240.14a-9.

51. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the misleading Proxy, which attempts to minimize the number of shares voting against the Proposed Transaction.

53. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

54. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there

are no material misstatements or omissions.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligent, recklessness, or intentional conduct.

56. The Company is also deemed negligent, reckless, or intentional as a result of the Individual Defendants' intent in preparing and reviewing the Proxy.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies in the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 19, 2026

**ADEMI LLP**

By: */s/ John D. Blythin*
Guri Ademi
John D. Blythin
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
gademi@ademilaw.com
jblythin@ademilaw.com

*Attorneys for Plaintiff*